## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**CIVIL ACTION NO. 5:03CV-231-M**

**LOURDES MEDICAL PAVILION, LLC**                          **PLAINTIFF**

**v.**

**CATHOLIC HEALTHCARE PARTNERS, INC.**                  **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Catholic Healthcare Partners, Inc., for summary judgment [DN 18]. The Plaintiff, Lourdes Medical Pavilion, LLC, responded [DN 21] and the Defendant replied [DN 22]. On January 31, 2006, this matter was transferred to the undersigned. By Order entered February 3, 2006, the Court requested the parties file additional briefs addressing the applicability of KRS § 275.340. The parties have filed the requested briefs and responses [DN 28, DN 29, DN 30, DN 31]. Fully briefed, this matter is ripe for decision. For the reasons set forth below, CHP's Motion for Summary Judgment is **DENIED**.

### I. FACTS

On May 29, 1998, Lourdes Hospital, Inc. (hereinafter "Lourdes") and the PAPI corporate entities[1] (hereinafter "PAPI") formed Lourdes Medical Pavilion, LLC, (hereinafter "LMP") with each entity owning fifty percent of the limited liability company. Lourdes is

---

[1] The PAPI entities include: Paducah Area Physicians Incorporated; SurgiCare; Paducah Medical Center Realty; and Health Care Management Resources, Inc.

a nonstock, nonprofit corporation. Catholic Healthcare Partners, Inc. (hereinafter "CHP) is the sole member of Lourdes. Lourdes and PAPI entered into an Operating Agreement governing the control and management of LMP. LMP provides diagnostic services, ambulatory surgery services, and other healthcare services to patients residing in Paducah, Kentucky and surrounding areas. LMP also operates a medical office building which is used primarily by members of the medical staff of Lourdes Hospital. Under the Amended and Restated Operating Agreement of LMP, Lourdes and PAPI agreed not to engage in owning and operating a multi-purpose medical office building in competition with LMP. They further agreed not to expand any outpatient surgery centers or otherwise compete with LMP in the provision of outpatient surgery services. (January 1, 2000 LMP's Amended and Restated Operating Agreement at Section 3.7 and Annex E.)

In December of 1998, LMP and CHP entered into a Non-Competition Agreement under which CHP agreed that it or any affiliate would not engage in "acquiring, starting up, and owning, operating, disposing of, and otherwise dealing with any of the lines of business carried on by [LMP]" including owning or operating a multi-purpose medical office building and expanding Lourdes Outpatient Surgery Center. (LMP/CHP Non-Competition Agreement at § 1 (a),(b)(citing Annex. E to the Lourdes/PAPI Operating Agreement.)) An "affiliate" for purposes of the Non-Competition Agreement "means any entity of which CHP has a greater than 50% interest in the entity's control or equity." (Non-Competition Agreement §1(f).) According to the terms of the Non-Competition Agreement, in the event of a breach by CHP, LMP "shall be entitled to obtain a temporary restraining order and

temporary and permanent injunctive relief . . . [and] the recovery of damages . . ."  (Non-Competition Agreement §5.)

In 2002, CHP announced plans to construct a new $27 million Marshall Nemer Pavilion, which would contain new medical offices and have more space for outpatient surgery.  CHP did not give PAPI or LMP any notice of these plans, and by April of 2002 PAPI believed that the new project announced by CHP violated the terms of the Non-Competition Agreement between LMP and CHP.  At a LMP Board of Directors meeting on April 25, 2002, Dr. Robert Meriwether, on behalf of PAPI, moved for LMP to employ legal counsel to look into the actions of CHP and file legal action against CHP.  The motion did not pass.  A subsequent motion made at the next Board of Directors meeting on August 15, 2002 failed as well.

On September 30, 2003, LMP filed this complaint against CHP alleging multiple breach of contract claims, tortious interference, breach of fiduciary duties, and breach of the covenant of good faith and fair dealing.  Specifically, LMP alleges that CHP breached the Non-Competition Agreement by expanding outpatient surgery services and construction of new physician office space.  CHP filed this current motion for summary judgment arguing that LMP lacked the corporate authority to bring suit against CHP and, as a result, the claims against CHP should be dismissed.

## II. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there

is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The inquiry under Fed. R. Civ. P. 56(c) is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52 (1986). See also Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

## III. DISCUSSION

Defendant, CHP, argues that LMP lacked the corporate authority to bring suit against CHP because a majority of the Board of Directors of LMP never approved this action as required under the terms of the LMP Operating Agreement, and as a result, summary judgment in favor of CHP is warranted. LMP disagrees and maintains that the authority to bring this suit comes from Section 15.9 of the LMP Operating Agreement and KRS §275.335.

### A. The LMP Operating Agreement

Under the terms of the Operating Agreement, LMP is managed by an elected Board of Directors, five of whom are from Lourdes and five of whom are from PAPI. (Operating Agreement at § 9.1.) The Board of Directors have the authority to delegate certain action to

an Executive Committee consisting of two individuals, one appointed by the Lourdes Directors and one appointed by the PAPI Directors. (Operating Agreement at § 9.3.) Pursuant to Section 9.4 of the Operating Agreement, "[a]ny act to be taken by the Directors shall be subject to approval by the majority vote of the Directors." The Operating Agreement further provides that "[i]n all such instances, the Lourdes Directors shall have one collective vote and the PAPI Directors shall have one collective vote." (Operating Agreement at § 9.4.)

In the event the Directors fail to reach an agreement on matters that come before them, the Operating Agreement provides that "the Members or the Directors . . . agree to abide by, and to cause the Company to abide by, the dispute resolution mechanism" set forth in Article 14 of the Operating Agreement. (Operating Agreement Section 14.1.) Further, Section 15.9 of the Operating Agreement entitled "Enforcement," states in relevant part:

> In the event of a breach or threatened breach by a Member or Manager of any of the provisions of this Agreement, the Company shall be entitled to obtain a temporary restraining order and temporary and permanent injunctive relief . . . . Nothing in this Agreement may be construed as prohibiting the Company from pursuing any other remedy or remedies, including without limitation, the recovery of damages. . . . Notwithstanding anything to the contrary herein, the determination of whether the Company shall pursue actions for breach of this Agreement by a Member shall be made exclusively by (i) Lourdes, if the alleged breach is by a PAPI Entity, or (ii) the PAPI Entities, if the alleged breach is by Lourdes.

(Operating Agreement § 15.9.)

### B. LMP's Authority to Sue under Section 9.4 of Operating Agreement

CHP contends that LMP did not have the corporate authority to sue pursuant to section 9.4 of the Operating Agreement. Section 9.4 provides that "any act" taken by the

5

Board of Directors must be approved by a majority vote. Therefore, under this section, in order for LMP to bring suit against CHP for the alleged breach of the Non-Competition Agreement, both the Lourdes Entity and the PAPI Entities had to approve the lawsuit. (Operating Agreement at § 9.4.) Because Lourdes refused to authorize suit, LMP was not authorized under the Operating Agreement to file suit. As discussed above, the Operating Agreement provides that in the event the Members fail to reach an agreement on matters that come before them, Lourdes and PAPI agree to abide by the dispute resolution mechanism set forth in Article 14 of the Operating Agreement. (Operating Agreement § 14.1.) Therefore, under the terms of the Operating Agreement, PAPI and Lourdes were required to participate in dispute resolution to resolve the issue of whether LMP could file suit against CHP for breach of the Non-Competition Agreement. Clearly, given the terms of the LMP Operating Agreement, LMP did not have the corporate authority to sue CHP.

### C. LMP's Authority to Sue under Section 15.9 of the Operating Agreement

LMP maintains that it did not need the majority of the Directors' votes pursuant to section 9.4 of the Operating Agreement because Section 15.9 of the Operating Agreement specifically authorizes an action by LMP against a member in breach of the Operating Agreement.

Contrary to LMP's assertion, this action is not an action by one member of the limited liability company against another member pursuant to Section 15.9 to enforce the terms of

6

the Operating Agreement.[2] While the Court recognizes that CHP is the sole member of Lourdes, there is no indication in the record at this time that CHP and Lourdes are the same corporate entity. Both parties recognize that Lourdes Hospital is a Kentucky nonstock, nonprofit corporation and CHP is an Ohio nonprofit corporation. In fact, until this action at least, it appears that the parties treated CHP and Lourdes as separate, distinct entities. For instance, in May of 1998, Lourdes and PAPI entered into an Operating Agreement that governed the management of the limited liability company, LMP. The Operating Agreement contained a non-competition clause that governed the activity of both Lourdes and PAPI with respect to LMP. In December of 1998, LMP and CHP then entered into a Non-Competition Agreement to govern "CHP's obligations concerning activities that may compete with the LLC." (Non-Competition Agreement at p. 1.) If CHP and Lourdes were the same entity then why would the parties feel it necessary to enter into another non-competition agreement addressing the same business activities contained in the Operating Agreement between Lourdes and PAPI.

While the complaint references Lourdes and Lourdes's conduct, LMP has sued only CHP. LMP could have properly sued Lourdes for a breach of the Operating Agreement pursuant to Section 15.9. As discussed above, Section 15.9 provides that "the determination of whether the Company shall pursue actions for breach of this Agreement by a Member shall be made exclusively by . . . the PAPI Entities, if the alleged breach is by Lourdes."

---

[2]Interestingly, at times even Defendant refers interchangeably to CHP and Lourdes.

7

Instead, LMP chose to bring this action solely against CHP for breach of contract and tortious interference relating to the Non-Competition Agreement between LMP and CHP. Therefore, Section 15.9 of the LMP Operating Agreement does not authorize LMP's suit against CHP.

### C.  Kentucky Limited Liability Company Act

LMP maintains that authority to bring the present action also comes from KRS § 275.335 of the Kentucky Limited Liability Company Act which allows one member of a limited liability company (hereinafter "LLC") to bring suit on behalf of the LLC despite the majority vote requirement if a member has an interest in the vote and/or outcome of the litigation that would be adverse to the LLC.  KRS §275.335 provides:

> Unless otherwise provided in a written operating agreement, a suit on behalf of the limited liability company may be brought in the name of the limited liability company only by:
>
> (1) One (1) or more members of a limited liability company, whether or not the operating agreement vests management of the limited liability company in one (1) or more managers, who are authorized to sue by the vote of more than one half (½) of the number of members eligible to vote thereon, unless the vote of all members shall be required pursuant to KRS 275.175(1). In determining the vote required under KRS 275.175, the vote of any member who has an interest in the outcome of the suit that is adverse to the interest of the limited liability company shall be excluded; or
>
> (2) One (1) or more managers of the limited liability company, if an operating agreement vests management of the limited liability company in one (1) or more managers, who are authorized to do so by the vote required pursuant to KRS 275.175 of the managers eligible to vote thereon. In determining the required vote, the vote of any manager who has an interest in the outcome of the suit that is adverse to the interest of the limited liability company shall be excluded.

8

KRS § 275.335.

CHP contends that KRS § 275.335 does not permit LMP to sue because the terms of the LMP Operating Agreement controls. The Court agrees. Clearly, the phrase "[u]nless otherwise provided in a written operating agreement" contained in KRS § 275.335 includes Section 9.4 of the LMP Operating Agreement, which provides that "any act" taken by the Board of Directors must be approved by a majority vote. Therefore, despite the remainder of KRS § 275.335 cited by LMP, in order for LMP to bring suit against CHP for the alleged breach of the Non-Competition Agreement, both the Lourdes Entity and the PAPI Entities had to approve the lawsuit. (Operating Agreement at § 9.4.) As noted above, because Lourdes refused to authorize suit, LMP was not authorized under the Operating Agreement to file suit.

Notwithstanding, this finding does not resolve the question of whether summary judgment is appropriate under Kentucky law. KRS § 275.340 of the Kentucky Limited Liability Company Act prohibits the use of "authority to sue" as a defense in an action brought on behalf of the LLC. Specifically, KRS § 275.340, entitled "Effect of determination that member or manager lacks authority to sue on behalf of company," provides:

> A determination that a member or manager does not have authority to sue on behalf of the limited liability company shall not be asserted as a defense to an action brought by the limited liability company or as a basis for the limited liability company to bring a subsequent suit on the same cause of action.

KRS § 275.340.

CHP maintains that while KRS § 275.340 by its terms may not allow it to assert as a defense that a member or manager did not have authority to bring suit, this statute should not be allowed to contravene or negate other parts of the Kentucky Limited Liability Company Act. Specifically, CHP argues that KRS § 275.335 specifically provides that the LMP Operating Agreement controls and the Operating Agreement requires a majority vote of the Directors in order to bring suit on behalf of LMP.

The Court rejects CHP's argument. The language of KRS § 275.340 clearly and unambiguously provides that the "lack of authority of a member or manager to file suit on behalf of an LLC may not be used as a defense to an action filed by the LLC." Thomas Rutledge and Lady Booth, <u>The Limited Liability Company Act: Understanding Kentucky's New Organizational Option</u>, 83 Ky. L.J. 1, 42 (1995). Accordingly, even though the Court has determined this suit was not authorized by the Board of Directors of LMP, CHP cannot use this as a defense pursuant to the clear language of KRS § 275.340. For these reasons, the Court finds summary judgment against LMP is not warranted.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, CHP, for summary judgment [DN 18] is **DENIED**.

cc: counsel of record